Judge Buckner,
delivered the opinion of the court.
Upon a writing, purporting to have been executed by Turner, O. Sproul, J. Davis and W. Mitchell-, Turner,in 1826, instituted an action of covenant against Sproul (Mitchell and Davis having previously departed this life) and recovered a judgment, for the sum of $203 25 cents, and costs.
An execution oí fieri facias issued upon it, was returned by the sheriff “satisfied.”
The following is a copy of the instrument.
“Agreement between John Davis, W. Mitchell, Oliver Sproul, and Squire Turner, witnesseth, that said Davis, Mitchell and Sproul, have employed said Turner to attend to all suits they may have with William McBride’s heirs or Lapsley’s heirs, about the tracts of of land, they live on; also, to attend to perfecting their titles to said land, derived through Bryant Young, against said McBride’s heirs; he is to attend to all suits and counsel said persons, until said contests are ended.
We are to give said Turner seventy-five dollars, for his trouble, to be paid in twelve months. We are all bound to pay him,, but are to apportion it among us,, according to our interest in said land. We are to give him seventy-five dollars more, when the claim to said land is settled, if we are successful, or compromise. October, 6th, 1819.
SQUIRE TURNER, SEAR.
OLIVER SPROUL, SEAL.
JOHN DAVIS, SEAL.
WM. MITCHELL, SEAL.
In April, 1827, Sproul filed his bill in chancery, making Turner and the present appellants, defendants, setting forth those facts; alleging, that the instrument aforesaid, was signed by Sproul, and by Davis an,d W. Mitchell or their agent; that Turner quieted the claim *265 “of McBride’s heirs, and prevented the institution of a suit; by going to Frankfort, and meeting their agent there; and tliarhe performed the stipulations of the ■agreement on his part; and that he, Sproul, had been ■compelled to discharge the judgment, the appellants refusing to pay any part of it.
The appellants, by their answers, expressly deny, that their intestates executed the instrument referred to; or authorized any one else to do it for them. They say, that they had not, before, h'eard of any such claims to the lands of their intestates; And put Sproul'upon the proof of every allegation of his bill.
At the October term, 1829, the circuit court entered a decree, that as the whole amount paid by Sproul, in satisfaction of the judgment, including interest, to ■the date of the decree, was $260 86 cents, the administrators ef Davis should pay to him, $ 107 77 cents; and those of Mitchell, §89 71 cents, to be levied of the assets in their hands, being the amounts, for which the estates of their intestates were respectively bound; •apportioning the judgment amongst them'and Sproul, according yo the different extents of interest which they held in the land mentioned in the agreement or covenant with Turner; and that the appellants should jointly pay, out of the assets in their hands, the costs of prosecuting the chancery suit.
From this decree, the administrators have appealed to this■ court, and have assigned such errors, as present the points necessary to be considered.
We-are-of opinion, for reasons, which we shall give after noticing the proof Vi the cause, that the decree cannot be sustained. %
It clearly appears, that' the names of '¡Davis .and W. Mitchell, when they were not present, were signed to the written agreement with Turner, by Sproul or John Mitchell, without any written authority. The witnesses most relied upon on the'part of the appellee, were John Mitchell and his wife-. From his deposition, it appears, that Achilles Sneed claimed to be -agent for McBride’s heirs, who set up claim to the -lands of Sproul, Davis and Wm. Mitchell, and that Sproul held a part of his land under Davis; that they all held under Bryant Young; and were fearful that a suit would *266 be instituted against them, for it, in behalf of said heirs. With rei-pect to the execution of the writing, above exhibited, he makes, in substance, the following statements; that, on the morning of its exécution W. Mitchell and Davis came to his house, and authorized him and Sproul to make the contract with Turner, which they did. Sproul’signed the instrument for himself, and he and the witness (John Mitchell,) signed the names of Davis and W. Mitchell. He says, that he afterwards informed Davis and Mitchell of the contract which had been made with Turner; and they sefemed to approve it, saying, that the sum agreed to be paid as the fee, was as íow as they had expected. At the time of making the contract, it was agreed, that Turner should attend, at braukfort, where Sneed lived, on a day, thereafter to be appointed, at which place and lime, Young was to be requested to attend also, that they might endeavor to adjust the expected controversy. Davis and J ames Mitchell, (son of W. Mitchell) went to notify Young. Subsequent to this, W. Mitchell and Davis told him, that Turner did go to-Frankfort, and sec Sneed on the subject, when the business was settled io their satisfaction; and their land had been saved. He fu-ther states, that Davis and W. Mitchell continued to reside on their land mentioned, which is, in the county of Madison, until they died; and that tire reason which influenced them, in procuring him to make the contract for them, was, that they were old men, and not as capable of attend-. ing to such matters as he was.
Mrs. Mitchell also states, that she heard W. Mitch-' ell and Davis say, that Turner had been to- Frankfort, and the contest was all settled. She also heard her husband inform them of the contract, which had been' made with Turner, and they approved it.
We have given the substance of John MitchelPs deposition, because it explains the manner in which the contract with Turner was entered into. If the authority alleged to have been given by Davis and W. Mitchell, to Sproul and him, to employ a lawyer for thorn, depended altogether on his statements, we should not be satisfied, that it was ever conferred; because it is proved, that he is a man unworthy of credit op oath. But several other witnesses, state that D<ivi» *267 and W. Mitchell requested John Mitchell and Sproul to engage a lawyer to attend to the expected controrersy for them and Sproul; and said they might make for them any contract they thought proper, and they would contribute equally towards the payment of the fee which might be agreed upon.
ari f1Jct t0 bind his principal bí a writing 7l'YLClñT SGCLL n<\. must be ai\. - thorizedby deed-
where the power gran-teLl fy ,an CT^if^inan attempt to hind his prin. cipal, he vary from it, what he does is not merely voidable by the. principal, but;, it absolutely void.
*267 To enable an attorney in fact to bind his principal, by a writing under seal, be must be authorized by deed; see Paley on Agency, 133, where it is said, that even a partner, though the articles of partnership were under i / q L J seal, cannot bind his co-partner by deed, without an authority of as high a nature; see also, the case of McMurtry and Peebles vs. Frank, IV Mon. 41, and the case there cited from IX Marshall, R. 375.
Yarious other authorities might be cited, if deemed necessary, in support of the doctrine advanced. But suppose, that the authority to make such a contract with a lawyer, had been conferred by a writing under sea], how could such power have authorized the irtser-. lion of a clause, binding Davis, Mitchell and Sproul to each other, to apportion the amount agreed to be paid to Turner, among themselves, according to their respective interests in the lands. The power confided to the agent, to make a contract with a lawyer, did not justify his attempt to bind his principals to each other and to himself, with respect to the amounts to be paid by each. The clause, in the covenant on that subject was important, binding Davis and W. Mitchell to be answerable, for considerably more than Sproul was to pay. It may be said, that it was but just and reasonable, that it should be so, as they were more interested, in the anticipated controversy, than he was. The obvious answer to this, is, that an agent, constituted to act for his principals, in relation to a particular matter, and with power to act in relation to that matter only, is not thereby authorized to make a different contract, however reasonable, or even advantageous to the persons for whom he acts, it may be.
Where the power granted to an agent is special, if, in an attempt to bind his principal, he vary from it, what he does, is not merely voidable by the principal, but is absolutely void; Paley on agency, 150; Dehart, &c. vs. Wilson, &c. VI Mon. 577. and the authorities there cited. '
*268 Ill this case, not a witness intimates, nor is it even insisted upon, as true, that Sproul or John Mitchell had any authority, to. bind' Davis and W. Mitchell, with respect to the amounts for which they and Sproul should be responsible to each other. Had Davis and W. Mitchell been sued at law, on the covenant upon the- plea of non est facluin, it is clear, that under the proof, they would have been entitled to a verdict in their favor.
But it has been insisted, that although they may not. have been hound at law, by the written contract, at the time of its execution, they subsequently sanctioned it, and thereby gaye it validity. We may find in the books many examples of confirmations of voidable deeds; but there is an important difference between a voidable and á void deed. In the case for example, of a deed executed by an infant, very slight circumstances or expressions by the grantor, after Ins arrival.at full age, have been held to be such a recognition of it, as would confirm it. But this doctrine cannot be applied to a deed void in its origin. We are more: over, by no means satisfied with the proof on the part of the appellee, by which he attempts to establish such a recognition by the intestates of the appellants.''
Acknowledgments of a. party ought, at all times, to, be received with great caution; but after a-lapse of about nine-years from the time that such acknowledgments are alledged to have been made, they are entitled to still less weight than they would be, if recently made. It is not proved, that Davis and W. Mitchell ever spoke to Turner on the subject of the engagement with him. That Turner had a right to demand a judgment against Sproul, we doubt not; but cannot perceive any view of the subject which can justify the decree rendered against the appellants, to its full extent. They were not parties to the- suit at law of Turner against Sproul; nor do they seem to have had any notice of its pendency. They cannot, therefore, as the representatives of their intestates, be responsible to Sproul, for more (han the sum,and interest there-oil, which he rightfully paid for their intestates. One half of the fee agreed to be paid, depended on the performance of a condition precedent,, which is expressed in the covenant, in the following words: “when *269 die claim to said land is settled, if we are successful or compromise.” It is admitted, that the expected suit was not commenced; for the appellee charges, that Turner prevented it by his exertions. But where is the proof of a compromise? What was its character? Was it in writing or parol? Where is the proof that Sneed was authorized to enter into such compromise?
By way of response to all these questions, the answer given by the appellee is, that the intestates of they-appellants acknowledged that Turner had been to-Frankfort, and that the contest was all settled, and they appeared satisfied.- Surely if any obligatory compromise was made, the appelle had better evidence of it, within- his reach. He has omitted however to produce it, and has placed it,on acknowledgments said to have been made in the presence of a man of bad-character and his wife, many, years previously. The judgment in favor of Turner was had, moreover by default. The appellee’s omission, or wilful negligence to defend, must not operate to the prejudice of others.-
We are nevertheless of opinion, that Sproul was entitled to a decree against W. Mitchell’s administrator for one third of the $75, which, by the contract was payable without condition, with interest thereon, from the time it was due; and for one third of the costs of the common law suit, with interest; and to a like decree against the administrator of Davis; because Sproul could not have resisted a recovery at the suit oil Turner, for the sum of $75 and interest. At the instance and request of W. Mitchell and Davis, he and J. Mitchell employed Turner; making a contract, which, from the power vested in them, they had a right to make by parol promise; and which, had it not been reduced to writing under seal, would have been obligatory, in a court of law, upon the principals, as well as on Sproul. Although they went beyond the authority vested' in them, Sproul does not appear to have been actuated by any fraudulent motive. He ignorqntly bound himself alone, supposing that the others would be equally bound with him. • It would be manifestly unjust, for him to pay the whole of the fee, without any remuneration, which was paid, in discharge of a debt, created in purl: for their benefit. *270 Whether Turner might have sued W. Mitchell and Davis and recovered from them, upon a, quantum, mdruil; or whether Sproul could, after he paiebthe judgment to Turner have recovered against them, in a common law court, the amounts for which they were,injustice bound, it is not necessary here to inquire. If it -be conceded, that Sproul could have recovered at law, it does not follow, that a court of chancery cannot properly entertain jurisdiction.
A person rvho has bcencompelled to pay money by the judgment of a court of competent jurisdiction, to the payment of which, others should, injustice, have contributed, may, by bill in equity, compel them to contribute.
Anciently., it was in courts of equity alone, that one surety, who had been made to pay the whole debt, could compel contribution from his co-sureties.
A surety who hasbeen compelled to pay the whole debt, may coerce contribution from his co-sureties by an action at law.
Chancery has concurrent jurisdiction with the courts of oontribution by co-sureties, has been I?a<3e,t‘tfay '
*270 The appellee, presenting himself before the chancellor, may bo properly assimilated to a co-obligor or surety, who has been compelled to pay the whole of a debt, to the payment of which others ought to have contributed. Suppose instead of services agreed to be rendered by Turner as a lawyer, the covenant had been executed in consideration ofproperty purchased by Sproul and John Mitchell, by the directions of the other parties for the joint benefit of Sproul, W. Mitchell and Davis, and that the two latter had received their portions of it, can it be contended, that under such circumstances, the appellee having paid a judgment recovered on a bond or covenant executed for the price, would be without redress? Were he to sue at law, he could not prove an express promise, by those whom he ignorantly considered as bound with him in such bond. Admit however, that he could recover in a common law court, it would not be strictly speaking, because he had paid money, at the instance and request of those for whose benefit he had become bound, for that would not be true; but on the ground of having been compelled, like a co-surety or co-obligor, to pay money by the judgment of a court of competent jurisdiction, to the payment of which, others were injustice, con-tributary. It was in courts of equity exclusively, according to the ancient practice,that one surety who had been made to pay the whole of the debt, had a right to claim contribution from his co-sureties; because,in such case, there is no express contract for contribution. His right to demand it stands upon the broad principles of natural justice, and not upon any express contract. The doctrine is now well settled, that redress may be obtained at law; but the court of chancery has not been ousted of itsjurisdiction.
Judge Underwood is of opinion that Sproul has no right to any decree. Judge Buckner thinks that he *271 is entitled to a decree for two thirds of §'75, with legal 'interest thereon, and two thirds of the costs of the suit at law. The chief justice is of the opinion, that the authority of the agents was general, and was not transcended, except in the affixation of the seals; that therefore, as Mitchell and Davis recognized the act of the agents, and were benefuted by it, they were bound by it in equity; that their representatives are estopped by their conduct and acknowledgments to require other evidence of the compromise than that which has been given’; that therefore, they are bound to Sproul, in equity, for contribution according to the tenor of the entire contract with Turner; and that it would be unj ust to compel Sproul to lose what he paid for saving their land, when they, by their conduct, induced him to believe that they would not dissent from the contract as made.
_
Caperton, for appellants; Turner, for appellee.
He therefore thinks, that this opinion does not go far enough, but that it ought to affirm the decree. A majority of the court is therefore of opinion, that Sproul is entitled to a decree for two thirds of the $75, and of the costs at law, as expressed in the foregoing opinion.
Wherefore, the decree of the circuit court is re. versed, and the cause remanded, with instructions to enter a decree according to this opinion.

Judge Underwood dissenting from the opinion of the, majority of the court, delivered his own opinion, as follows:

I concur in the reasoning of the opinion just delivered, so far as it conduces to prove that the instrument bearing date in 1819, vvas not obligatory upon John Davis and Wm. Mitchell. I am altogether opposed to so much of the opinion as renders the representatives of Davis and Mitchell responsible for any part of the sum decreed against them. The right of Sproul to recover according to the allegations of the bill, depends upon the validity of the instrument, dated in 1819, Turner’s recovery at law thereon, in 1826, against Sproul, and his payment of the money. Now, it is clear to my mind, that Davis and Mitchell were not liable upon that instrument, either directly or indirectly. If they were liable at all, it ivas upon a parol contract, which has not been relied on by any appropri *272 ate allegations; and if it had been set forth, the statute of limitations would probably have constituted an availing defence against it. Indeed, I do not doubt that the statute of limitations would have been a com» píete bar to the recovery of the $.75, now decreed, if the claim had been based upon the parol contract. The statute began to run from the 6th of October, 1820, when the money was due. I deny that any payment which .Sproul might make, after Turner’s right» if it ever had any existence against Davis and Mitchell, was barred by time, could create a liability against them, either in law or equity. Turner’s claim againstSproul, fop the $75, due on the 6th of October, 1820, would have been barred by time but for the written covenant. If Sproul has placed himself in a condition in which he cannot avail himself of the statute, I cannot see how or why that circumstance should, like* wise, prevent Davis’ and Mitchell’s representatives from relying on that defence. If the covenant of 1819, had been sustained, as efficacious against Davis and Mitchell, then Sproul’s rigid of action against them would accrue upon his payment of the money, and then, as joint obligors, they would have been liable to Sproul for contribution in a court of chancery. In that case, he would have been, to some extent, th'eir surety. 'But as the instrument of 1819, was not binding on them,'and as any parol engagement which they may have entered •into, for the payment of the $75, on the 6th of October, 1820, was barred by time, I cannot perceive how fire blending of these contracts can, upon any principle of law, jointly constitute a valid cause of action, to which the defence resulting from the statute will not apply; when taken separately, it is manifest no recovery can be had on either of them. The representatives of Davis and Mitchell have avoided the effect of the Instrument of 1819, by the plea of non est factum., and thus they have nullified the foundation of the bill.of Sproul. Yet, notwithstanding this, he is permitted to assume new grounds, growing out of the parol engagement, which have not been alleged as a distinct cause for the recovery sought against the representatives of Davis and Mitchell. They have thus been thrown off their guard, and while they have been successfully com-batting the right of Sproul'to recover upon the written instrument, he has, in effect, succeeded upon a parol *273 contract not distinctly avowed by the pleadings, and against which they have had no opportunity to defend themselves; and against which, it is manifest, there exists an available defence. 1 cannot tolerate a recovery, in chancery, when the basis, on which the bill places the right, has been undermined. Proof, without allegations justifying its reception, should be disregarded. This maxim is too well settled to require the citation of authorities in support of it.
For the foregoing and other reasons, I think that the chancellor had no jurisdiction of the cause made out by the proof, and that the merits of the case are with the appellants; consequently, 1 am for reversing the decree and directing the bill to he dismissed.

The counselfor the appellee presented the following petition Jar a re-hearing.

The undersigned, counsel for the appellee in this honorable court, for the first time, in a limited practice in the court, of ten years, feels constrained, from duty to his client, to'petition for a reconsideration of this cause, which reconsideration, he hopes, will result in an entire affirmance of the decree of the inferior court.
Your petitioner will proceed to point out the grounds on which he expects a change in the opinion of this court. The court says, “one half of the fee agreed to be paid depended on the performance of a condition precedent, which is expressed in the covenant in the following Avords; ‘when the claim to said land is settled,if we are successful or compromise.'' “It is admitted that the expected suit was not commenced, for the appellee charges, that Turner prevented it by his exertions. But where is the proof of a compromise? What was its character? Was it in writing or by parol? Where is the proof that Sneed was authorized to enter into such compromise?” Again, the court say, “surely if any obligatory compromise was made, the appellee had better evidence of it,’’ alluding to the proof of the acknowledgments of appellants’ intestates.
From this extract, it may reasonably be inferred that the court, in construing the contract between the parties and Turner, was of opinion, that as there was no suit instituted by McBride’s heirfc, there was no other *274 mode left, by the contract, for- Turner to become erifitied to the contingent part of his fee than by written compromise; and that it was the duty of foproul to have produced such evidence of coihpromise. Your Pe^ioner construes the written contract differently, The contingent, compensation of Turner depended entirely On this clause of the agreement. “We are to give him, (Turner,) seventy-five dollars more, when the claim to said land is settled, if we are successful or compromise.” By adverting to the whole contract, the difficulty about the title to the land of Mitchell,. &.C., the parties contemplated might end in one of three ways; by a suit, by compromise, orbe settled, which last expression is understood to embrace any mode of arranging the matters in dispute, so as to put them to fest; any thing which would keep Davis, &c. from being harrassed with McBride’s claim, would be settling^ the claim tO the land “successfully.”
Now, suppose the fact to be, that Turner and Bryant Young, on meeting McBride’s heiis and their agent, Sneed, at Frankfort, and exhibiting their muniments of title, to the land in dispute, on the part of Davis,, &c., McBride’s heirs and their agent, Sneed, were convinced that their claim to the land was not good, and would be unavailing at law, and declared at once, in presence of Young, Turner and one of the parties, that they abandoned their claim and would not further contest Davis’, &c. title, and really acted accordingly for the six ensuing years, which elapsed before Turner pressed for his fee, would it not be settling the controversy in a manner most beneficial to Davis? &c.
Here, let it be observed, that the contingent fee, on the part of Turner, did not depend on his “attending to perfecting Davis’, &c. title to their land.” This is a stipulation which, if he failed to perform, gave them a right of action against him.
If the above construction of the written agreement be correct, let us inquire whether the proof in the cause does not fully show, that the contest with McBride’s heirs was settled as supposed. We' shall omit John .Mitchell’s evidence, although we think his .statements fully sustained by «ther witnesses, and if he were not, that Davis, &c'; <ftv5 estopped to discredit their own agent.-
*275 David Mitchell proves that William Mitchell came to his father’s, John Mitchell’s, and requested John Mitchell to go to Richmond with Sproul, and employ a lawyer to attend to the business named in the contract with Turner. Shortly after the contract, James Mitchell, son of William Mitchell, came to John Mitchell’s to know what contract was made with Turner, and afterwards went to give Young notice to meet Turner at Frankfort.
Leroy Mitchell proves the aame stated by David, Mitchell, as to the time that William Mitchell and John Davis came to John Mitchell’s, and said to John Mitchell and Sproul, that they could make a contract for them, and authorized them to do so.
Absalom Bridge says, some years before William Mitchell’s death, he told him that he expected him, #ohn Davis, and O. Sproul would be sued for their land, and that John Mitchell was well acquainted with law, and that they all then had determined to gel him to employ a lawyer for them.
Edward Jopling proves, that about the date of the contract with Turner, he was at John Mitchell’s house, in company with O. Sproul, John Davis, and William Mitchell; they had met there with an intention of going on to Richmond, to employ a lawyer to attend to a contest which was about to take place for their lands with Sneed, who claimed under McBride’s heirs.
William Mitchell and John Davis finally declined going to town, and agreed with Sproul and John Mitchell, for the two latter to go to town and employ counsel, and they would comply with any contract made.
Margaret Mitchell states, that about the date of the contract with Turner, William Mitchell and John Davis came to her husband’s house, and Sproul met them there; they all said they were on their way to Richmond, to employ counsel, to attend to a contest with Sneed about their lands. William Mitchell and Davis determined not to go to Richmond, and procured Sproul and John Mitchell to go and employ counsel for them. After they had returned, John Mitchell informed William Mitchell and Davis what the contract which they had made with Turner was, and they said Ihey were satisfied with it-..
*276 William Mitchell then sent one of his sons with John Davis, as she heard them say, to Nelson county, to notify Bryant Young, who was concerned, to meet Turner at Sneed’s house in Frankfort. After they returned from Young’s, she heard William Mitchell and Davis say, Turner had been to Frankfort on the business, find they said the contest was all settled,, and they appeared satisfied.
This testimony in the absence of all opposing evidence of any sort or description; and when at the end of ten years after the date of the contract before this case was tried in the circuit court, not a whisper of the controversy since Turner’s visit to Frankfort, had ever been heard, and Mitchell's and Davis’s representatives do not pretend that McBride’s claim has ever disturbed or troubled their intestates, or that there is any prospect of it. We may fairly conclude that the coutroversy was “successfully settled.”
But the opinion rather intimates that it wms incumbent on Sproul, to show that Sneed was authorized to act for McBride’s heirs. In the absence of all proof to the contrary, is not the evidence that the parties recognized Sneed as the agent of McBride's heirs by William Mitchell’s sending his' son and John Davis, going with him to get Bryant Young to meet Turner at Sneed’s, and James Anderson’s evidence that Sneed set up claim to the land; and the fact that McBride’s claim has not been set up to this land since Turner went to Frankfort on this business; and that it was set up, and a suit threatened immediately before, strong evidence that Sneed had authority to act for McBride’s heirs?
We contend however, that as Mitchell and others treated Sneed as the agent for McBride’s heirs, and directed Turner to treat with him as such, that it was not incumbent on Sproul to prove the authority of Sneed to represent those heirs.
If, in all these positions, we are mistaken, is not the acknowledgment- of Davis and Mitchell that Turner had settled the case to their satisfaction, evidence, not only of such setttlement, but that it was made with a person authorized to settle, and especially after the lapse of time since, and the entire acquiescence on the part of McBride’s heirs in what Sneed did?
*277 The opinion intimates, that the lapse of time is rather against Sproul, we cannot but think it is greatly in his favor.
We contend that the fact of SprouPs suffering judgment to go against him in favor of Turner, for the whole demand, and that judgment to be collected from him by the sheriff, is a strong circumstance in favor of the justice of this demand.
Sproul well knew whether or not it was just on the part of Turner to demand the whole fee. He was interested in contesting the demand. There is another view of this subject which results favorable to Sproul.
The court in the opinion rendered, do not base the right of Sproul to recover from Davis and Mitchell's representatives, their proportion of Turner’s certain fee on the ground, that the written contract with Turner was valid; the opinion holds the written contract so far as Mitchell and Davis are concerned, to be void.-, and still make this same written contract so far binding as to cut off SprouPs right of recovering the contingent portion of the fee of Turner, and thus the written contract is void where it would benefit Sproul, and obligatory where it will injure him.
The grounds on which the court give Sproul a decree for the certain part of Turner’s fee is, that although the written contract is void, still Sproul and John Mitchell had a yerbal authority to employ counsel, and having employed Turner with the sanction afterwards of William Mitchell and Davis, and they having received the benefit of Turner’s services under the contract, and acknowledged themselves well satisfied with his services and success; that in equity they were bound to pay their share of the fee.
Now we contend that the evidence of Turner’s earning the contingency is equally strong, as that he earned the certain fee; because, when the written contract is set aside,it is only the value of his services that there can be any demand for, without regard to what had been agreed upon. And as the testimony conclusively shows that Mitchell and Davis were satisfied with Turner’s charge, and declared it quite reasonable, and acknowledged themselves satisfied with Turner’s p.er *278 formalice of his undertaking, the whole demand, it would seem to follow, should be decreed. The acknowledgment that the proportion pf Turner’s compensation that each was to pay, was satisfactory and approved of by the parties, is equally explicit.
We therefore, with all due deferance for the opinion of the court, ask a re-consideration of this cause, and hope that such re-consideration will result, by an application of the principles recognized in the opinion already delivered, in an entire affirmance of the decree of the circuit court.

Judge Buckner delivered the following response to the pe-> tition for a re-hearing.

The court has attentively considered the petition for a re-hearing, which has been presented in this case by the counsel of Sproul. It is there said, that “the court do not base the right of Sproul to recover from Davis’ and Mitchell’s representatives, their proportions of Turner’s certain fee, on the ground, that the written contract was valid; yet, it is considered so far binding, as to cut off Sproul’s right of recovering, the con tin-gent portion of the fee,” &c.
The opinion delivered, does not warrant the.remarks. The covenant was considered so absolutely void, as to Davis and Mitchell, that they might, if sued on it, have successfully relied upon a plea of non est factum; but, as binding on Sproul, in all its parts; For the reasons advanced in the opinion delivered, the appellants, as the representatives of their intestates were held responsible, for so much as Sproul -paid for Davis and Mitchell, the payment of which, he could not have avoided.
Turner’s duty, under that covenant, was to attend to perfecting the titles of Sproul, Davis and Mitchell, to the land derived through Bryant Young, &c. and “to attend to all suits, and to counsel said persons, until said contests are adjusted, or compromised.” When, therefore, in the latter part of the written agreement, it is stipulated, that he is to have seventy-five dollars more, “when the claim to the land is settled, if we are successful,” the word successful, must be applied to the issue of the expected suit or suits. Without a suit, there could not be any such successful settlement, *279 or adjustment, as the parties contemplated. But if there was a compromise, it answered the purposes of Turner, as well as such successful adjustment. That there is no satisfactory testimony of such compromise, has been already remarked., and it is not necessary to repeat the reasoning which leads to that conclusion, It has been already remarked,.that if añycompromise did take place, Sproul liad better testimony of the fact, than that which he produced. Why did he not take the deposition of Mr' Turner? He would be a competent witness, and yrould, doubtless, have cheerfully given it, if applied to for that purpose. The statements oí no one else, considering the part which he •acted, would have been more satisfactory. Had he or any other person, who knew what had been done, stated the facts, an opportunity would thereby have been afforded to the court, satisfactorily to determine, whether it was “a compromise,” within the meaning of the contract. Sproul has failed to produce such a proof, and must abide the consequences. A mere omission on the part of Sneed, claiming to be the agent of McBride’s heirs, to commence a suit on their claim, is not sufficient. His omission may not. have been the result of a compromise. The heirs may yet prosecute their claim, and for all that we can say,.successfully.
But the case, in the opinion delivered, has been so fully considered, that it is deemed unnecessary to extend the discussion. No view taken by the counsel for Sproul, inclines me to change or modify that opinion.
The opinion of the chief justice has been stated. Judge Underwood is not willing to grant a re-hearing, with the intention of departing from the ground, which he has assumed, in the opinion delivered by him.
A majority of the court, therefore concut in overruling the petition.